EDMUND A. SARGUS, JR., CHIEF UNITED STATES DISTRICT JUDGE
Defendant's Specific Causation Expert
This matter is before the Court on Plaintiff's Motion to Exclude Any Opinions and Testimony by DuPont's Expert Witness Dr. Samuel Cohen that Plaintiff's Kidney Cancer was Caused by her Obesity ("Motion to Exclude Cohen Testimony") (ECF No. 4224) and DuPont's Brief Regarding the Admissibility of Dr. Cohen's Testimony ("Brief Regarding Exclusion of Cohen Testimony") (ECF No. 4223). For the reasons that follow, the Court GRANTS IN PART AND DENIES IN PART PLAINTIFF'S MOTION.
I.
The litigation between the parties in this multidistrict litigation ("MDL") began in 2001 in a class action in West Virginia state court captioned Leach v. E.I. du Pont de Nemours & Co. , No. 01-C-698 (Wood County W. Va. Cir. Ct.) ("Leach Case"). The Leach Case ended in November 2004 when the parties entered into a class-wide settlement ("Leach Settlement Agreement"). (Leach Settlement Agreement ("S.A."); ECF No. 820-8.) In the Leach Settlement Agreement, the parties fashioned a unique procedure to determine whether the approximately 80,000 members of the class ("Leach Class") would be permitted to file actions against DuPont based on any of the human diseases they believed had been caused by their exposure to ammonium perfluorooctanoate ("C-8"
*679 or "PFOA") discharged from Defendant E. I. du Pont de Nemours & Company's ("DuPont") Washington Works plant.
The procedure required DuPont and the plaintiffs to jointly select three completely independent, mutually-agreeable, appropriately credentialed epidemiologists ("Science Panel") to study whether there is a connection between C-8 and human disease among the Leach Class. (S.A. at §§ 12.2.1, 12.2.2.) If the Science Panel found that it was "more likely than not that there is a link between exposure to C-8 and a particular Human Disease among Class Members," the Panel issued a Probable Link Finding for that specific disease and DuPont waived its right to challenge whether "it is probable that exposure to C-8 is capable of causing" the Linked Disease, i.e. , general causation. (S.A. § 3.3.) The Science Panel engaged in its work for seven years and in 2011 and 2012 issued Probable Link Findings for six human diseases ("Linked Diseases") and No Probable Link Findings for over forty human diseases. The members of the Leach Class whose claims are based on one or more of the Linked Diseases began to file cases in West Virginia and Ohio. Of the over 80,000 members of the Leach Class, approximately 3,500 filed cases in accordance with the Leach Settlement Agreement. Those actions are centralized in this MDL.
Plaintiff Carla Marie Bartlett suffered from kidney cancer, a Linked Disease, that she believes was caused by her exposure to C-8. Her case is the first to go to trial. As part of Mrs. Bartlett's case-in-chief, she must prove, inter alia , that C-8 specifically caused her kidney cancer. To that end, Mrs. Bartlett has offered expert testimony from Robert Bahnson, M.D. and Vitaly Margulis, M.D., F.A.C.S., who opine that her kidney cancer was specifically caused by her exposure to C-8. While DuPont has no burden to show that Mrs. Bartlett's kidney cancer was caused by something other than her exposure to C-8, it offered the opinion of Samuel M. Cohen, M.D., Ph.D., who concluded that Mrs. Bartlett's kidney cancer was caused by her obesity. ("Cohen Report"; ECF No. 2807, Ex. A.) Dr. Cohen also offered testimony related to obesity as a risk and causal factor in kidney cancer and testimony to rebut Mrs. Bartlett's claim that her injury was specifically caused by her exposure to C-8. Mrs. Bartlett moved to have Dr. Cohen's opinion excluded under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court ruled on Ms, Bartlett's Motion, as well as several other motions for exclusion under Rule 702 and Daubert , on July 20, 2015, in Evidentiary Motions Order No. 1 ("EMO 1"). (ECF No. 4079.)
Subsequently, Ms, Bartlett moved in limine for exclusion of Dr. Cohen's expert opinion and testimony specifically related to obesity, (Pl.'s Mot. in Limine No. 6; ECF No. 4085.) The Court heard oral argument on that motion, as well as thirty-nine others, on August 24 and 25, 2015 at a Motions in Limine Hearing. (ECF Nos. 4209, 4210.) On August 31, 2015, the Court decided Mrs. Bartlett's Motion in Limine No. 6, as that Motion was narrowed at the Motions in Limine Hearing. (Motion in Limine Order No. 2 ("MIL 2"); ECF No. 4206.)
At the Final Pretrial Conference held September 9, 2015, the parties again raised the issue of Dr. Cohen's testimony and their disagreement as to the direction given in EMO 1 and MIL 2. The Court ordered a third round of briefing on the issue, directing the simultaneous exchange of briefs setting out the parties' positions. In accordance with that direction, the parties filed the briefs that are currently under *680 consideration at 8:30 p.m. on Friday, September 11, 2015.
On Monday, September 14, 2015, before the start of Mrs. Bartlett's trial, this Court held a conference on the record and rendered the decision orally that is memorialized and expanded upon in this Opinion and Order.
II.
In Mrs. Bartlett's Motion to Exclude Cohen Testimony, she maintains that "Dr. Cohen should not be allowed to testify at trial or provide expert opinions, as his opinions have already been excluded under Daubert ." (Pl.'s Mot. to Exclude Cohen Testimony at I) (citing to EMO 1 at 17.) DuPont, however, argues that Dr. Cohen's testimony has not been completely excluded, and not only should he be permitted to testify as to the role of obesity in kidney cancer generally, but he is allowed to offer his ultimate conclusion that Ms. Bartlett's kidney cancer was caused by her obesity.
The Science Panel found that it is more likely than not that there is a link between exposure to C-8 and kidney cancer among the Leach Class. The Science Panel, therefore, issued a Probable Link Finding for kidney cancer. Thus, the Leach Settlement Agreement dictates that any plaintiff in this MDL who
1. has a Linked Disease
2. and who, "for the period of at least one year,"
3. has "consumed drinking water containing .05 ppb or greater of C-8 attributable to releases from [DuPont's] Washington Works" plant from any of the "six specified Public Water Districts" or any of the Covered Private Sources named in the Leach Settlement Agreement
is entitled to the benefit of the Probable Link Finding, and DuPont waived its ability to contest general causation . (S.A. § 2.1.1) (emphasis added). General causation is defined by the Leach Settlement Agreement as "it is probable that exposure to C-8 is capable of causing" the Linked Disease in the Leach Cass member. (S.A. § 3.3.)
In this Court's earlier decision, it found that much of Dr. Cohen's opinion is contrary to the Leach Settlement Agreement. (EMO 1 at 11) (Dr. Cohen's opinions refer to his "analysis as relating to specific causation, when in actuality the analysis is directed at what the parties defined in the Leach Settlement Agreement as general causation"). In EMO 1, this Court explained:
The Leach Settlement Agreement unambiguously dictates the effect of the [Probable Link] Findings: If the Science Panel found that it was "more likely than not that there is a link between exposure to C-8 and a particular Human Disease among Class Members," the Panel issued a Probable Link Finding for that specific disease and DuPont waived its right to challenge whether "it is probable that exposure to C-8 is capable of causing" the Linked Disease, i.e. , general causation.
....
Again, as the Court explained in DMO 1 and DMO 1-A, the plaintiffs are not required to prove that their dose of and/or exposure to C-8 is capable of causing their Linked Diseases. If the plaintiffs prove that they are a member of the Leach Class and that they have or had a Linked Disease, the Probable Link Finding applies to them. Application of the Probable Link Finding establishes that it is more likely than not that there is a link between that class member's exposure to C-8 and his or her Linked Disease, and DuPont is prohibited from challenging whether it is probable *681 that exposure to C-8 is capable of causing that Linked Disease.
Id. at 9-10.
Therefore, the Court excluded Dr. Cohen's general causation testimony and opinions, and it reaffirms that exclusion now. Id. at 11. Dr. Cohen's referenced testimony is not relevant because there is no "connection between the [opinion] being offered and [any] disputed factual issues" that are before the Court. Pride v. BIC Corp. , 218 F.3d 566, 578 (6th Cir. 2000) (citing Daubert , 509 U.S. at 592, 113 S.Ct. 2786 ). Because Rule 702"requires that the evidence or testimony 'assist the trier of fact to understand the evidence,' " expert testimony "which does not relate to any issue in the case is not relevant and ergo, nonhelpful." Daubert , 509 U.S. at 590-90, 113 S.Ct. 2786. "In other words, there must be a 'fit' between the proposed testimony and the question(s) presented by the case at bar." Id. at 591, 113 S.Ct. 2786. Here, Dr. Cohen's testimony is not relevant because it cannot assist the trier of fact to understand the evidence or to determine any fact in issue .
Dr. Cohen also offers opinions related to the specific cause of Mrs. Bartlett's kidney cancer ("Dr. Cohen's Ultimate Causation Opinions"):
I conclude, to a reasonable degree of medical certainty, that Mrs. Bartlett's kidney tumor was most likely the result of her history of morbid obesity and not related to her claimed exposure to PFOA. Her cancer would have likely occurred even without any exposure to PFOA.
....
The [PFOA] exposure that Mrs. Bartlett claims was not associated [in any study] with an increased risk of kidney cancer.
In sum, it is my opinion ... that the renal cell carcinoma of Mrs. Bartlett resulted from her history of morbid obesity, and was not caused by or related to her low exposure to PFOA.
....
As indicated above, there has been a suggestion of a possible relationship in some studies between PFOA and kidney cancer. However, this only occurs at exposures considerably higher than Mrs. Bartlett's exposure.
(Cohen Report at 5, 22, 23.)
These opinions contradict the threshold used in (a) the Leach Settlement Agreement, and (b) the Science Panel's Probable Link Finding. In other words, Dr. Cohen opines that C-8 has not been found to be capable of causing kidney cancer in a member of the Leach Class. He cannot testify to this.
Because of Dr. Cohen's faulty premises, his differential diagnosis is unreliable. A differential diagnosis, which "is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." Pluck v. BP Oil Pipeline Co. , 640 F.3d 671, 678 (6th Cir. 2011) (internal quotation marks omitted). The reliability of a differential diagnosis is determined by, inter alia , whether the "expert reliably rule[d] in the possible causes" of the disease under consideration. Id. (emphasis added, citations omitted). This Court previously held that Dr. Cohen's differential diagnosis is unreliable, explaining
that the Probable Link Findings are valid and reliable evidence admissible to establish that it is more likely than not mat there is a link between the Trial Plaintiffs' exposure to and/or dose of C-8 and their Linked Diseases. Therefore, DuPont has contractually agreed that its experts must rule in C-8 as a possible cause of Mrs. Bartlett's kidney disease.... Accordingly, the portions of *682 ... Dr. Cohen's opinions that fail to rule in C-8 as a possible cause of the [Mrs. Bartlett's] Linked Disease[ ] are unreliable and excluded under Daubert and the Federal Rules of Evidence.
(EMO 1 at 17.)[1]
In its current briefing, DuPont argues that Dr. Cohen's Ultimate Causation Opinions did in fact reliably rule in C-8 as a potential cause for Mrs. Bartlett's cancer. This Court, however, disagrees. As the Court just quoted above, while he discussed C-8, Dr. Cohen unequivocally states that it could not be a cause of Mrs. Bartlett's kidney cancer. Dr. Cohen's statements disregard completely the Science Panel's Finding that it is probable that exposure to C-8 is capable of causing Mrs. Bartlett's kidney cancer.
To let Dr. Cohen now change his opinion when there is (a) no intervening event or new studies - only this Court's decision excluding his opinion, and (b) no prior disclosure in discovery regarding this opinion, is improper. Dr. Cohen in his Report used a different dosage, a different drinking history, and a different conclusion than the Science Panel utilized. To let him testify contrary to the Science Panel's Finding would eviscerate the Leach Settlement Agreement. Because Dr. Cohen failed to rule in C-8 as a possible cause of Mrs. Bartlett's kidney cancer, his Ultimate Causation Opinions are unreliable and excluded under Daubert and the Federal Rules of Evidence.
It is undisputed that it is Mrs. Bartlett's burden to prove specific causation. What that means is, under Federal Rules of Civil Procedure 56 and 50 later in trial, DuPont could not merely counter affirmative evidence of specific causation with argument to the jury that Mrs. Bartlett's witness should not be believed. But, DuPont can present a witness to create a triable issue by attempting to disprove the reliability of testimony on specific causation, which is what may be done here with Dr. Cohen.
Dr. Cohen's testimony is admissible to rebut Mrs. Bartlett's claim that her injury was specifically caused by exposure to C-8. For example, the following part of his Report is admissible for impeachment purposes:
The written reports of the plaintiff's experts are incorrect when they indicate that they can dismiss Mrs. Bartlett's obesity. As explained above, obesity is a very well established risk factor of the development of renal cell kidney cancer.
Although some of the expert opinion reports for the plaintiff list many potential risk factors for kidney cancer, in fact many of the substances on their lists refer to risks associated with kidney pelvis urothelial tumors, not for renal cell carcinomas. For example, phenacetin is listed by them as a cause of renal cell carcinoma. Although it is associated with kidney damage (to the renal papilla), it is only associated with urothelial tumors, most commonly of the kidney pelvis but *683 also of the ureters and urinary bladder (IARC, 2012).
Based on the CV's provided of the plaintiffs' experts, it does not appear that they have experience with investigations concerning animal carcinogenesis or human cancer epidemiology, nor do they appear to have experience on committees or panels related to an evaluation of cancer etiology or extrapolation from animal models to humans. They appear to be relying on published reports without a background to critically analyze them.
....
In the reports of Dr. Stein and Dr. Margulis, they refer to her kidney tumor as stage 2. That is incorrect as the tumor would have had to have been >7 cm, in greatest diameter for such a classification, and Mrs. Bartlett's tumor was up to 3.2 cm. in diameter according to the pathology report and was never measured greater than 5 cm. in diameter in imaging studies.
(Cohen Report at 23); (see also MIL 2 at 5) (testimony regarding the role of obesity in kidney cancer generally).
DuPont is cautioned that Dr. Cohen may not utilize his impeachment role as a back door to state his opinions related to general or specific causation that have been excluded. And, Mrs. Bartlett is cautioned not to cross Dr. Cohen in a way that would revive his challenges to the Science Panel Findings.
III.
Based on the foregoing, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion to Exclude Cohen Testimony. (ECF No. 4224)
IT IS SO ORDERED.

See Dispositive Motions Older ("DMO") No. 1 and DMO 1-A, for information on why the plaintiffs in this MDL are not required to prove that their dose of and/or exposure to C-8 is capable of causing their Linked Diseases. In short, the Court explained that the Leach Settlement Agreement provides that if the plaintiffs prove that they are a member of the Leach Class and that they have or had a Linked Disease, the Probable Link Finding applies to them, Application of the Probable Link Finding establishes that it is more likely than not that there is a link between that class member's exposure to C-8 and his or her Linked Disease, and DuPont is prohibited from challenging whether it is probable that exposure to C-8 is capable of causing that Linked Disease.